GULF PIPE LINE CO. v. CLAYTON.†

(Court of Civil Appeals of Texas. Galveston. June 24, 1912. Rehearing Denied Oct. 10, 1912.)

1. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

A servant who knew how many men it would take to lift a pipe from a ditch on a vice principal's order to throw it out jumped into a ditch 4 feet deep and 20 inches wide, stooped over, and took hold of a pipe, waiting for other men to get hold and for the order to lift, in which position he could not see how many men had hold, and was injured by lifting because not enough men had been put on the pipe to lift it. *Held*, that he was not as a matter of law guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

2. MASTER AND SERVANT (§ 222*)—ASSUMPTION OF RISK—DANGEROUS WORK—LIFTING.

A servant who undertakes by order of the master to lift with the assistance of others a weight beyond the capacity of himself and those engaged with him in the lifting assumes the risk of so doing, and cannot recover for any injury suffered by him in thus overtaxing his strength.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 648–651; Dec. Dig. § 222.*]

3. MASTER AND SERVANT (§ 213*)—ASSUMPTION OF RISK—DANGEROUS WORK—LIFTING.

A servant who knew how many men it would take to lift a pipe from a ditch on the order of a vice principal jumped into a ditch 4 feet deep and 20 inches wide, and took hold of the pipe while waiting for other men to get

hold and for the order to lift, in which position he could not see how many men had taken hold, and, when he found that the weight was too great because not enough men had hold of the pipe, was in such position that he could not let go without great danger to the feet of himself and the other men, and held on and was injured. *Held*, that as a matter of law he had not assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 559–564; Dec. Dig. § 213.*]

4. NEGLIGENCE (§ 65*)—"CONTRIBUTORY NEGLIGENCE"—CARE REQUIRED OF SERVANT.

Contributory negligence is a failure to act in a given case as a man of ordinary prudence would have acted in the same or other circumstances.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 83, 94; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

5. TRIAL (§ 252*) — REQUEST FOR INSTRUCTIONS—CONFORMITY TO EVIDENCE.

A requested charge on an issue not raised by the evidence is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSIBILITY OF EVIDENCE.

In a servant's action for injuries resulting from attempting to lift a pipe from a ditch, the admission of testimony that a man standing at the bottom of a ditch 4 feet deep and 20 inches wide could not lift as much as he could from the surface of the ground was harmless error, since it was so obvious that no testimony was required.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

7. TRIAL (§ 260*) — INSTRUCTIONS — REPETITION.

Requested charges substantially covered by those given are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

Appeal from District ·Court, Jefferson County; L. B. Hightower, Judge.

Action by B. C. Clayton against the Gulf Pipe Line Company. Judgment for plaintiff, and defendant appeals. Affirmed.

D. Edward Greer, F. J. Duff, and F. C. Proctor, all of Beaumont, for appellant. Jas. A. Harrison, C. W. Howth, and M. G. Adams, all of Beaumont, for appellee.

REESE, J. In this suit B. C. Clayton sues the Gulf Pipe Line Company to recover damages for personal injuries alleged to have been sustained by him while engaged as an employé of the defendant in laying a pipe line, and which injury is alleged to have been proximately caused by the negligence of one Murphy, foreman of the work, and alleged to be a vice principal of defendant. On trial with a jury plaintiff recovered a judgment for $5,000, from which defendant prosecutes this appeal.

In substance, briefly stated, it was alleged in the petition: That while engaged in laying pipe for a pipe line for appellant one end of two lengths of pipe, screwed together and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes
† Writ of error denied by Supreme Court.

weighing 750 or 800 pounds, fell into a ditch dug for the pipe; the ditch being about 4 feet deep and about 20 inches wide. The other end of the pipe rested upon a board called a "growler board" placed across the ditch. There was a force of 30 or 40 men engaged in the work under the direction and control of one Murphy, a sort of subforeman called a "stabber." When the two lengths of pipe, which were about 40 feet long, broke off from the balance of the line of pipe and one end fell into the ditch, Murphy gave a general order to get into the ditch and throw the pipe out. Clayton jumped into the ditch, with five or six other men, and caught hold of the pipe. When Murphy gave the order to "throw it out," Clayton began to lift as directed. The pipe was too heavy to be lifted by the men engaged in the attempt, and in making the attempt Clayton was seriously injured by straining and exerting himself beyond his capacity. The negligence charged against appellant was that Murphy, the foreman, and vice principal, failed to use ordinary care to see that a sufficient number of men got into the ditch to lift the pipe, which it was alleged was the proximate cause of the injury. Other grounds of negligence are charged in the petition, but they were all eliminated by the charge, which presents the sole ground of negligence above stated. Appellant in its answer presented general demurrer and special exceptions, which were overruled, and pleaded general denial, contributory negligence, and assumed risk.

The evidence authorizes the following conclusions of fact: Appellee at the time of his injury was in the employ of appellant, and with a gang of 30 or 40 men was engaged in laying a pipe line. The men were under a foreman, Brandenberry, who was absent from the work at the time of the accident, and at that time they were working under the direction and orders of a boss, or, as he was called, a "stabber," Jim Murphy, who stood in the place of the foreman and directed the work. The work consisted of taking joints of 6-inch pipe, each about 20 feet long, which had been previously placed on the ground end to end, screwing them together so as to form a continuous line, and then laying them in a ditch. While engaged in this work, and while working upon the line of joints screwed together, over a ditch, with one end of the line resting upon a board called a "growler board," lying across the ditch, in some way the two joints, at the end fastened together, broke loose from the line and dropped into the ditch; that is, one end lay in the ditch and the other end rested upon the growler board. The ditch was about 4 feet deep and about 20 inches wide. The two joints of pipe thus fastened together weighed 750 or 800 pounds. Murphy, the boss, spoke generally to the men, about 30 of whom were standing around, and told them to get in the ditch and throw the pipe out. This order was not addressed to any one in particular. Appellee at once got in the ditch at the lower end of the pipe, and several others variously estimated as six or eight in all, got in with him, ranging themselves along the pipe from the lower end next to appellee up towards the other end which rested on the growler board. They got hold of the pipe, when Murphy, who stood by the side of the ditch, gave the order to throw the pipe out as a signal for them to lift. This is the story appellee tells about how the accident occurred, and its substantial accuracy is not disputed, and we adopt it as true: "After I had gotten into the ditch, and had assumed a stooping posture with my hands under the pipe line, I retained that position until the word of command was given. This was given by Murphy, who said, 'Throw it out.' When we taken hold of the pipe, stooped over and taken hold of the pipe, he said, 'Pitch it out.' We waited for orders in this way because we waited for the men to get down in the ditch. I did not know how many men were in the ditch at the time Murphy gave the order, and at the time I lifted it up. I could not see from my position after I had taken hold of the pipe. For me to see how many men were in the ditch that had hold of the pipe line at the time the command was given to raise, I would have had to turn loose the pipe and either look over the men, or have had to stoop or lean over one way or the other to look around. That is the only way. If I had done that, I should not have been in position to obey the command to lift it. When we had lifted it up part of the way, it tore my side all loose. I don't know what happened. The pipe dropped back on me. I was in a shape where I couldn't turn loose. I had to hold it, and I was expecting the other men to hold too. It just shoved my right arm down. I was nearly half bent, I guess. It just tore my side all loose. The pipe was too heavy for one man to lift it out of the ditch and throw it on the bank. After we lifted it part of the way up, it jarred some way or other and came back on us. I either had to hold it or let it mash me. It strained me and tore the muscles loose on my side."

The men, as stated, were working in a ditch 4 feet deep and 20 inches wide at the bottom of which the pipe lay, and in that cramped position were unable to lift nearly as much as on the surface of the ground. It was customary, for this reason, to put 15 or 20 men, or as many as could get hold, in a ditch to lift out two joints of pipe, and the number put in to raise the two joints on this occasion was insufficient to do the work safely. After appellee and the others got started up with the pipe, he could not turn it loose, and let it fall without danger of injury to the legs or feet of himself and the other men. Stooped over as he was he

could not tell without raising up and looking how many men had gotten into the ditch. After they got in the ditch, they were expected to lift at the word of command of Murphy, at once, and it was necessary for them to act in unison. They had no time for deliberation after they got ready to lift. Appellee testified: "I had trouble right at the start, when I first commenced to lift the pipe, when I first got hold of it, but what could you do? It was too heavy, certainly, and the higher I got I kept on seeing it was too heavy for me. I kept on lifting, and I knew from the start that it was more than I ought to lift."

The evidence was conflicting as to the extent of Murphy's powers and authority, but it fully supports the conclusion, which we find, that he had the power to employ and discharge the men and that they were entirely subject to his orders in doing the work. He was not a fellow servant of the men, but a vice principal. We find that the accident to appellee was proximately caused by the failure of Murphy to see that a sufficient number of men were in the ditch to do the work safely, before he gave the order to throw the pipe out, and that in this regard he was guilty of negligence, which was the proximate cause of the injury, and we find that under all the circumstances existing at the time, appellee neither assumed the risk of the danger of attempting to lift the pipe with the insufficient number of men in the ditch, nor was he guilty of contributory negligence in doing so. There is no complaint that the verdict is excessive, and we find that the evidence fully supports the verdict as to the amount of damages to which appellee's injuries entitled him. Appellee was at the time a hale, stout man, about six feet tall, in the prime of life, accustomed to work, and reasonably experienced in the work in which he was engaged. He knew the weight of the pipe, and the number of men it required to lift it out of the ditch. At the time he began to lift he supposed that Murphy had done his duty and put enough men in the ditch to lift the pipe with safety. He did not look to see. In the position in which he was placed, he could not have seen without raising from his stooping position and looking around, and thus interrupting the work, which had to be done promptly and by all of the men lifting together at the word of command.

By its first assignment of error appellant complains of the refusal of the trial court, upon its motion, at the conclusion of the evidence for plaintiff, to instruct a verdict for defendant. By its second assignment complaint is made of the refusal of the court, after the conclusion of all the evidence, to charge the jury at the request of appellant to return a verdict for defendant. The two assignments present the general proposition that as a matter of law the evidence taken as a whole does not authorize a recovery by appellee.

No question is made by any of the propositions under either of the assignments as to the sufficiency of the evidence to establish the negligence of Murphy in the particular charged in the petition, nor that he was the vice principal of defendant.

[1] The propositions present the contention that, under the undisputed evidence, appellee either assumed the risk of danger to himself, or was guilty of contributory negligence, which would bar a recovery, in the following particulars: First. In using no care to ascertain himself, before attempting to lift the pipe, whether there were enough men in the ditch to lift and throw it out with safety, in which he was guilty of contributory negligence. Second. Because appellee, when he first took hold of the pipe and began to lift it, realized that it was too heavy for the men in the ditch to lift, but nevertheless did not make this known to the foreman, but went ahead with the lifting, and in this assumed the risk of the danger to himself in so doing, notwithstanding Murphy may have been negligent in putting an insufficient number of men in the ditch.

Appellee testified that he knew how many men it would take to lift the two joints of pipe out of the ditch, and that it was usual to put in 15 or 20, or as many as could get hold of the pipe. He further testified that he did not look to see how many men were put in the ditch before beginning to lift, that he trusted that to Murphy, whose business it was to see that a sufficient number of the 30 or 40 men standing around got in and took hold. The manner in which the work was done and the position of appellee and the other men has been shown. It could not be said that in the circumstances appellee did not have the right to assume, and to act upon the assumption, at least until he found out otherwise, that the foreman, whose undoubted duty it was to see that enough men got in the ditch to lift the pipe, had done his duty. Certainly it cannot be said as a matter of law, under all the evidence, that ordinary care for his own safety required appellee, before attempting to lift, to see that the foreman had discharged this duty.

[2, 3] But it is further contended by appellant that, according to appellee's own testimony, as soon as he began to lift, he discovered that there were not enough men at the pipe, that it was too heavy for them, and that after he made this discovery he continued to lift, and, knowing the danger, assumed the risk. Appellant upon this point invokes the authority of T. & N. O. Ry. Co. v. Sherman, 87 S. W. 887; Haywood v. Railway Co., 38 Tex. Civ. App. 101, 85 S. W. 433; T. & P. Ry. Co. v. Miller, 36 Tex. Civ. App.

240, 81 S. W. 535; Railway Co. v. Figures, 40 Tex. Civ. App. 255, 89 S. W. 780, and many other cases along the same line, as decisive of the question here presented. We think the peculiar facts of this case distinguish it from any of the cases cited, which establish the general proposition that a servant who undertakes by order of the master to lift by himself or with the assistance of others a weight beyond his capacity or beyond the capacity of himself and those engaged with him in the lifting assumes the risk of so doing, and cannot recover for any injury suffered by him in thus overtaxing his strength. The principle is a corollary of the general principle that the servant assumes the risk of dangers which are known to him in doing the work; it being assumed that the servant knows better than any one else the limit of his own strength, and when a weight he is ordered to lift is beyond his capacity. What was said by the Supreme Court in Railway v. Lemon, 83 Tex. 143, 18 S. W. 331, and in the Figures Case and the Sherman Case, supra, by this court, we do not consider decisive of the question of assumed risk in the present case. In those cases, and indeed in all of the cases cited by appellant, the person injured could plainly see how many men were engaged in the lifting, and there is the additional circumstance, which we think particularly distinguishes those cases from the present case; and that is, that, when the person injured found that the weight was too heavy, there was no excuse for his making the attempt to lift it, or, having started, persisting in the attempt. He could either stop before the lifting began, or, having begun, he could stop whenever he found the weight dangerously heavy. In the present case it is apparent from the testimony that appellee could not readily see, and in fact did not know, whether or not there was a sufficient number of men in the ditch to lift the pipe and had a right to rely upon the foreman to look out for that. The other distinguishing fact arises from the position of the men and the character of the work. Notwithstanding the testimony of appellee quoted above, and so much relied upon by appellant upon this issue, it is not at all clear that appellee as soon as he felt the weight of the pipe, and before the lifting had begun, appreciated the danger of attempting to lift it with the men in the ditch. After the lifting had begun, which was done in a moment, at the word of command, and the pipe had been raised a little way, it may quite well have appeared to appellee that it was as dangerous for him to turn loose as to go ahead, and it cannot reasonably be said as a matter of law that he was guilty of a want of ordinary care for his own safety, when he had the pipe started up, and found then that it was too heavy, in not stopping at once and calling for more men. He was not sitting in a rocking chair in a drawing room. He was cramped up—a man six feet high—and half bent, in a ditch four feet deep and twenty inches wide, and had no time to consult his fellows, or to exercise deliberate judgment as to what he had best do for his own safety. This condition was brought about by the negligence of the foreman, the alter ego of the master.

[4] There is no cast-iron rule by which the question of contributory negligence in a given case can be solved. The best that can be done is to apply settled rules, as near as may be, to the facts of each particular case, and the ultimate test in every case is how would a man of ordinary prudence have acted in the same or similar circumstances. It is very like the case where a man is put in a position of danger by the negligence of another, and, having to decide on the spur of the moment what course he shall take for his own safety, fails to do just what it afterwards appears he could have done to avoid the danger. Such a person is neither necessarily guilty of contributory negligence, nor does he assume the risk of the course chosen by him in the excitement of the moment. We think the case rather falls within the rule of Sherman v. Railway, 99 Tex. 571, 91 S. W. 562. It is true in that case the plaintiff was an inexperienced boy, and in this case appellee is an experienced man, but he was placed, by the negligence of the master, in a position where his experience was of no service to him. He had very probably never before been confronted with a similar situation, and was as inexperienced as to how he should act as was the plaintiff in G., H. & S. A. Ry. Co. v. Bonn, 44 Tex. Civ. App. 631, 99 S. W. 413, in which a writ of error was refused. We think the court did not err in refusing the peremptory instruction requested by appellant, and in submitting the issues to the jury.

The fourth assignment of error is without merit. The portion of the charge referred to cannot reasonably be construed as assuming that there was an insufficient number of men in the ditch to lift the pipe. The jury could not have so understood the charge. The gravamen of the complaint of appellee is that the foreman, Murphy, did not use ordinary care, not so much in not ordering a sufficient number of men to get into the ditch, but in failing to use such care to see that a sufficient number were in the ditch before giving the order to lift. The order of the foreman was addressed to the crowd of men standing by, about 30 or 40, but not more than eight, and possibly not more than six, got in. The case proceeds upon the theory that Murphy was guilty of negligence in failing to use ordinary care to see that a sufficient number of men had obeyed his order and got into the ditch before he gave the order to "throw it out." Although there were 30 or 40 men standing around subject to Murphy's orders, his order was directed

to no particular number of them, and as only six or eight of them got in the ditch, Murphy standing right there and looking on, and directing the lifting to proceed with only this number in the ditch, it cannot be said that he ordered the whole bunch into the ditch, or in fact any more than did get in. The fifth and sixth assignments of error are overruled.

The objection to a portion of the charge presented by the seventh assignment of error, as set out in the proposition thereunder, is not tenable and the assignment is overruled. The court did not err in refusing the motion for a new trial upon the ground set up in the eighth assignment of error. What we have said in disposing of the first and second assignments renders it unnecessary to discuss further this assignment.

We are unable to see any real merit in the argument so strenuously urged by appellant under the ninth assignment of error, based upon the circumstances that as the men stood at the pipe appellee stooping lowest, and the others towards the end of the line from him not so much, in a gradually ascending line, it rendered it easy for appellee to see how many men were in the ditch. The diagram showing the position of the men adds nothing to the force of the argument. The heads of the men are all in a line, and whether the line be an ascending one, or horizontal, would make no difference so far as it affects appellee's ability to see from his stooping position how many men were in the ditch. But we regard the matter so much insisted on as of no importance in the light of the facts, as found by us.

[5] The court did not err in refusing to give special charge No. 15 requested by defendant, as set out in the tenth assignment of error. There was no evidence to raise the issue. At any rate, the refusal was harmless in view of the charge of the court that, if there were enough men in the ditch to lift the pipe and throw it out with safety, the jury should find for the defendant. This completely exonerated appellant if the jury found that enough men were put in the ditch and the accident was caused by some of the men "soldiering" on the job.

What we have said in disposing of the first and second assignments is sufficient to dispose of the eleventh assignment, which is overruled. There is no merit in the twelfth assignment of error, which is overruled. The testimony objected to as coming from the appellee is, in substance, the same as that of several other witnesses admitted without objection, and, independently of this, was admissible.

[6] The witness Meachum was allowed to testify over the objection of appellant that a man standing in the bottom of a ditch 4 feet deep and 20 inches wide could not lift as much as he could from the surface of the ground. The objection is that it was not a proper subject for expert testimony and was only the opinion of the witness. The fact testified to is so obvious that really no testimony was required. Any man of common sense would know that these men in the ditch, on account of their cramped position, could not lift as much as they could from the surface of the ground, where their movements would be free and unimpeded. It could not have operated harmfully to appellant to admit the testimony.

The admission of the evidence referred to in the fourteenth and fifteenth assignments does not afford sufficient ground for reversal, if, in fact, it presents any error.

[7] There was no error in refusing to give special charge No. 4, requested by appellant, as set out in the sixteenth assignment of error, in view of the charge of the court. The court charged the jury expressly more than once in the general charge, as one of the conditions upon which they could find for appellee that they must first find that there were an insufficient number of men in the ditch to do the work safely. This will be found in the sixth and seventh paragraphs of the charge, and in this connection the jury was sufficiently instructed that appellee's right to recover depended upon the failure on the part of Murphy to use ordinary care. It was not necessary to repeat this by giving the requested charge.

The remaining assignments of error are directed to alleged errors in refusing special instructions requested by appellant. We think none of the assignments present reversible error. We have examined very carefully the charge of the court, which is a full and clear presentation of all of the issues presented by the pleadings and evidence, and, in so far as the requested charges are proper, they are substantially covered by the general charge. The charge referred to in the twenty-first assignment of error was properly refused for the reasons given by the trial court. It contains the unqualified statement that "there was no evidence that the defendant ever gave to Brandenberry the right or authority to delegate or transfer that authority (to hire and discharge men)." Several witnesses testified that Murphy exercised without hesitation and without let or hindrance the right to hire and discharge the men under him. This was done in such a way as to furnish reasonable ground for the inference that he was authorized to do so, and that he got his authority from Brandenberry, and exercised it with the knowledge of appellant. Williams v. Kirby Lumber Co., 136 S. W. 1182. The other assignments present no merit, and are overruled.

We find no error requiring reversal, and the judgment is affirmed.

Affirmed.